I. S. CALLENDER, Conservator,

*v.*

J. H. DOLE *et al.*

*Opinion filed October 25, 1902.*

1. APPEALS AND ERRORS—*when chancellor's finding will not be disturbed.* The chancellor's finding in favor of the defendants to a bill to set aside certain conveyances upon the ground of fraud, undue influence and want of mental capacity will not be disturbed, where the evidence is conflicting and the chancellor saw the witnesses and heard them testify.

2. FRAUD—*absence of motive is to be taken into consideration.* In a proceeding to set aside conveyances upon the ground of fraud, the absence of a motive for deception should be considered.

3. SAME—*when conveyances should not be set aside for fraud or undue influence.* The chancellor's finding that certain conveyances made by complainant's ward should not be set aside, will be upheld under evidence that the grantor was greatly indebted to the grantee and was hopelessly insolvent; that his grantee had advanced him money for several years to keep up his business; that all the property was taken at fair prices, but was totally insufficient to make up the grantee's claim; that all of the property, with the exception of statutory exemptions, might have been taken by the grantee by legal process, and that although the grantor was sick at the time and very weak, he understood the nature of his act, and, while depressed over the transaction, said it was the best he could do, and acknowledged the instruments as his voluntary act.

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. G. W. THOMPSON, Judge, presiding.

COOKE & STEVENS, and EDWARD J. KING, for plaintiff in error.

E. P. WILLIAMS, and J. D. WELSH, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a bill in chancery by I. S. Callender, conservator of G. W. Barnett, filed in the Knox circuit court, to have certain conveyances, consisting of deeds, bills of sale, assignments of insurance policies, etc., executed by

said Barnett on December 24, 1900, conveying his title and interest to J. H. Dole, one of the defendants, canceled and declared void. The grounds of the bill were want of mental capacity on the part of Barnett to comprehend the effect of his acts, and undue influence, fraud and deception on the part of Dole. Upon the hearing, which was upon testimony heard in open court, a decree was rendered finding the equities with the defendant Dole, and dismissing the bill at complainant's costs. To reverse that decree the conservator sued out this writ of error.

Barnett, for a great many years previous to the date of the conveyances, had been engaged in the business of buying and selling grain at Galesburg and at several railroad stations near that place, maintaining elevators and cribs at each of the stations. J. H. Dole, doing business in Chicago as a commission merchant as J. H. Dole & Co., for the past twenty years had been furnishing Barnett the money with which to buy grain, on the faith of warehouse receipts furnished him by Barnett from time to time, the latter drawing upon Dole for such sums as were needed, Dole having no other interest in the business than the profits accruing to him in the way of commissions. For eight or ten years prior to the conveyances in question Barnett was in straightened circumstances, and during the past few years he became so embarrassed that in order to strengthen his credit with Dole and obtain further advances of money he misrepresented to the latter the amount of grain on hand in his warehouses. His health failed and he was stricken with paralysis in August, 1900, and thereafter was confined to his home. His book-keepers continued to conduct the business, with the help of Dole. At the outset he was not able to give any directions concerning the business, but later so far improved in health that he was constantly advised of the business situation. Upon an examination of the books it was ascertained that he was hopelessly insolvent; that he owed Dole for advances $145,680.75;

that he had on hand grain in elevators amounting to $16,391.27, and real estate, consisting of elevators, corn-cribs, etc., of the probable value of $27,661. The grain on hand was marketed and the money received therefor credited to his account, leaving a balance due Dole on December 24 of $129,677.29. In addition to the advances made for grain, it appears that Dole had provided Barnett with money with which to pay his physician a bill which had reached the sum of $775, and had also paid his necessary household expenses. On December 24 the attorneys of Dole, accompanied by a notary public, called upon Barnett and asked him to convey to Dole the whole of his grain business, warehouses, etc., and also his homestead, which he did by executing a separate instrument for each piece of property. Afterwards a conservator was appointed, who began this proceeding to set those conveyances aside.

The sole contention on behalf of plaintiff in error is that the finding of the chancellor was contrary to the evidence. Upon a review of the record we are satisfied the finding was justified by the testimony and that the bill was properly dismissed. The question for decision is whether or not Barnett, at the time of making the conveyances, understood the nature of the act and was mentally capable of protecting his own interests, and was free from undue influence, coercion or deception. C. M. Armstrong, George S. Dole, G. P. Williams and Fred Holmes, the latter being a notary public, called at Barnett's house at about half-past nine in the morning of the day the deeds were made and found him sick in bed. Mr. Armstrong, acting as an attorney for Dole, stated to Barnett the condition of the account, and then asked him to execute the papers making the transfer. There was a preliminary conversation and then he began signing the papers. He made several signatures, but his writing became more difficult, and finally, at the attorney's suggestion, he executed the remainder of them by

mark. Two pieces of property occupied by corn-cribs had been overlooked, and the notary returned in the afternoon with papers conveying this property also, which Barnett signed. The notary testified: "After we went in the room a conversation took place about executing papers and taking acknowledgments. I read every paper to him before they were signed, and he signed each one as they were read. I then asked him the usual questions of a notary, if he signed these papers as his free and voluntary act, and he said he did. The form of acknowledgment was not read. Now, as I read several of the papers they seemed to be all the same way. Most all of them were in regard to the transfer of the elevator property, and in these cases they simply referred to the location. I explained to him they were the same as those that had been read, so the reading of one was the same as the reading of the others, except location. The deed was read to him in full, and explained. Several of the papers were signed by mark. He was bolstered up in bed and he became nervous and tired, and it was suggested that he be allowed to sign by mark, and several of them were signed that way. There were a couple of the papers finished in the afternoon and acknowledged then. * * * Barnett spoke of the transaction in the afternoon in a general way and seemed to be depressed. He said to me, 'They have all my property,—all the property I have,—and it will leave me in a bad fix.' He said he could not help himself—it was the best he could do. He didn't say why it was the best he could do. * * * He talked very reasonable. I understood him in morning and afternoon. I have known him fifteen years. In the morning he understood the business he was transacting. * * * He knew he was signing these papers. I think he understood what he did from his conversation in the afternoon. * * * He was sitting in a large chair. He had his underclothes on, in a large upholstered chair. I generally ask if it is the free and voluntary act, etc.

I was particular in this case, because I wanted him to fully understand, because he was a sick man, and I wanted to satisfy myself that he knew what he was doing. I considered it my business to satisfy myself. I was not suspicious about his condition. * * * I didn't suspicion him as not being in his right mind, but Barnett was a weak man. * * * I was particular about him to know about each one." A number of witnesses were examined, both for the complainant and defendants, as to his mental condition about the time and for several months prior to this transaction. There is the usual irreconcilable conflict in their testimony in such cases. We think, however, that, fairly considered, it preponderates in favor of the finding of the court below. Having seen the witnesses and heard them testify, the chancellor's finding will not be disturbed where there is a conflict of testimony, unless the finding is clearly wrong. On this record we fully agree that the evidence fairly preponderates in favor of the finding and decree below.

The contention that the signatures to the instruments in question were procured by fraud and undue influence is without merit. It must be remembered that Barnett was hopelessly insolvent. Dole could have taken from him what property he had by legal process, with the exception of his statutory exemptions. Therefore the motive for deception or undue influence did not exist. We do not mean to say that the fact that Barnett was largely indebted to defendant in error Dole would in any sense justify the latter in overreaching him. But the absence or presence of a motive for committing a deception should be taken into consideration, and doubtless was by the chancellor in reaching his conclusion. There was every reason why Barnett should have made the conveyances. There is no contention that the property was not transferred at its reasonable value. In fact, the record shows that the considerations named in the deeds were fair, and that a large balance of the indebtedness due Dole

then and still remains wholly unpaid and unsecured. This is not a proceeding on behalf of other creditors of Barnett to set aside the conveyances, but an effort on behalf of Barnett himself to have declared void the payment, in part, of his just indebtedness to Dole. Complainant expressly declined, upon the hearing, to go into the question of the amount of indebtedness or to have an accounting between the parties on that subject. The books, which are said to have been in the hands of Dole, were therefore wholly unimportant upon the hearing. Had the complainant desired to question the amount of the indebtedness and to use the books upon the hearing he could readily have compelled their production. The equities of this case throughout are strongly with defendants.

The decree of the circuit court will be affirmed.

*Decree affirmed.*